UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JANET E. ANTHONY                                      CIVIL ACTION

VERSUS                                                NO. 09-1009

JOHN POTTER, POSTMASTER                               SECTION: "C" (3)
GENERAL, UNITED STATES POSTAL SERVICE


### ORDER AND REASONS[1]

Before the Court is a motion for summary judgment, filed by Defendant John Potter, Postmaster General, United States Postal Service ("USPS"). (Rec. Doc. 41). Plaintiff Janet E. Anthony ("Anthony") opposes the motion. (Rec. Doc. 46). Having reviewed the memoranda of the parties, the record in the case, and the applicable law, the Court GRANTS Defendant's Motion for the following reasons.


### I. BACKGROUND

Anthony brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and the Age Discrimination of Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621(1)(a). Anthony alleges that she was discrimination against based on her race, gender, and age,

---

[1]Max Weiss, a second year student at Tulane University Law School, assisted in the preparation of this Order.

and because of her prior Equal Employment Opportunities ("EEO") activity and letter to Senator Mary Landrieu, was retaliated against by being temporarily reassigned to another Post Office in the aftermath of Hurricane Gustav. (Rec. Doc. 1 at 4-5).

Anthony was employed by the United States Postal Service ("USPS"), and prior to Hurricane Katrina she held the position of Manager of Transportation Networks in the New Orleans office. (Rec. Doc. 1 at 1). After Hurricane Katrina, she was transferred to the Baton Rouge office, holding the same position. *Id*. During this time she would come to New Orleans early in the week and return to Baton Rouge later in the week. (Rec. Doc. 50-3 at 1). In June 2008, she was "detailed" to the position of Service Coordinator and stationed in Baton Rouge full time. *Id*. On August 16, 2008, Carol Weisiger ("Weisiger") arrived at the Baton Rouge facility as Acting Plant Manager and Anthony's supervisor. (Rec. Doc. 41-2 at 4,5,6).

Hurricane Gustav made landfall on the South Louisiana coast on September 1, 2008. One week prior, the Postal Service began to prepare for the arrival of the storm by closing the New Orleans facility and re-routing inbound mail to other facilities, such as the USPS facility in Port Allen, Louisiana. ("Port Allen"). *Id.* at 1-2 ; (Rec. Doc. 1 at 3). Pursuant to USPS emergency protocol, numerous employees from all over the Southwest were called into the Southern Louisiana region to help work through the backlog of mail. *Id*. at 6. These employees were often asked to perform duties outside their regular job descriptions. *Id.* at 10. On September 3, 2008, Weisiger reassigned Anthony from her temporary "detail" position and instructed her to report to Port Allen to assist in processing the backlog of mail that had accumulated in the aftermath of the hurricane. (Rec. Docs. 1 at 3-4; 41-2 at 6). Anthony remained at Port Allen for three weeks. (Rec. Doc. 1 at 3). During this time, Anthony alleges that she incurred a moderate to severe case of carpal tunnel

2

syndrome, swollen knees, and chrondritis in her chest. *Id.* at 4. After the three weeks, Anthony went on extended sick leave until she ultimately retired from the USPS in January 2009. *Id.*

Anthony, an African-American female, who at the time of Gustav was 59 years-old, alleges that she was subject to gender, age, and race discrimination by being made to do mail processing work in Port Allen, unlike similarly situated younger white males. *Id.* at 1, 4-5; (Rec. Doc. 46-1 at 1). She claims that a white male co-worker, Gary LaBorde ("LaBorde"), was not transferred to another facility. *Id.* at 2, 5. She also indicated that Herman Ellis (African-American, male, over 55) and Martha Bratcher (Caucasian, female, age unknown) were also not instructed to go to another facility to process mail. (Rec. Doc. 41-2 at 9).

Anthony also alleges that her reassignment to Port Allen was in retaliation for her filing a prior EEO complaint as well as a congressional complaint to Senator Mary Landrieu. (Rec. Doc. 1 at 4). Specifically, on February 14, 2008[2], Anthony had filed an EEO complaint alleging discrimination based on her age, sex, and race. *Id.*; (Rec. Doc. 41-3 at 16). She had filed this complaint after she received a letter of warning in January 2008, because of emails she had sent to a previous supervisor that were deemed inappropriate. (Rec. Doc. 41-3 at 16). The complaint was dismissed by the EEO agency on March 27, 2008, with a finding of no discrimination. *Id.* at 17. On August 2, 2008, Anthony sent a letter to Senator Landrieu in which she gave a detailed account of her frustration regarding the general operations, functioning, organization, policies, and management of the USPS. (Rec. Doc. 41-5 at 7-14). Senator Landrieu in turn, sent a letter dated August 25, 2008, to Daisy Comeaux ("Comeaux"), the Direct of Public Relations for the USPS in New Orleans. *Id.* at 6. The date stamp on the Senator's letter, the enclosure, and the exterior of the

---

[2]The EEO Complaint went formal on May 22, 2008. (Rec. Doc. 1 at 4); Plaintiff's Deposition at 42.

envelope, which indicates receipt by the District Manager's Office, is marked September 9, 2008. *Id.* at 6, 7, 15.

On October 14, 2008, while on extended sick leave, Anthony contacted an EEO counselor and on December 19, 2008, filed a formal complaint with the agency. (Rec. Doc. 41-3 at 3, 4). On June 8, 2009, the EEO issued a decision with a finding of no discrimination. *Id.* at 6, 7.

## II. Law and Analysis

**a. Summary Judgment Standard**

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.

4

1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

**b. Disparate Treatment Based on Race and Gender**

Anthony alleges that she was subject to race and gender discrimination when she was reassigned from her managerial position to perform mail processing work at Port Allen, unlike similarly situated white males. (Rec. Doc. 1 at 4-5). Title VII of the Civil Rights Act of 1964 ("Title VII") provides that it "shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin . . ." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) (citing 42 U.S.C. § 2000e-2(a)). In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a burden shifting framework to analyze Title VII discriminatory treatment cases that can only be proven by circumstantial evidence. 411 U.S. at 802. First, the plaintiff must make a prima facie case by demonstrating that: (1) she was a member of a protected class, (2) she was qualified for her position, (3) she was subjected to adverse employment action, and (4) similarly situated employees not in her protected class were treated more favorably in like circumstances. *McDonnell Douglas,* 411 U.S. at 802; *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 281 (5th Cir. 2004). If the plaintiff establishes her prima facie case, the burden then shifts to the employer to put-forth legitimate, non-discriminatory reasons for its actions. *McDonnell Douglas*,

411 U.S. at 802. Upon doing so, the burden then shifts back to the plaintiff to show that the employer's legitimate reasons were just pretext for discrimination. *Id.*

The Fifth Circuit utilizes a "strict interpretation of the adverse employment element of the prima facie intentional discrimination case." *Pegram*, 361 F.3d at 282. Under Title VII principles, an employment action that "does not affect job duties, compensation, or benefits" is not an adverse employment action. *Id.* (quoting *Banks v. E Baton Rouge Parish School Bd.,* 320 F.3d 570, 575 (5th Cir. 2003)). "Rather, an adverse employing action consists of 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.'" *Id.* (quoting *Felton v. Polles*, 315 F.3d 470, 486 (5th Cir. 2002)). "Circuit precedent establishes that in cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Id.* at 283. Demotions can qualify as adverse employment action under Title VII. *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). An employment transfer may qualify as an adverse employment action if the change makes the job "objectively worse." *Id.* (quoting *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 770 (5th Cir. 2001)). Thus, in determining whether an employment action was adverse, courts should view the action objectively. *Pelgam,* 361 F.3d at 283.

Anthony cannot carry her burden of proof for the third element of a prima facie case for Title VII discrimination – that she was subjected to adverse employment action. At her deposition, Anthony testified that while she was working out of Port Allen, she received the same salary and benefits she had been receiving prior to Gustav, including sick and annual leave at the same rate, as well as retirement. (Rec. Doc. 41-3 at 13, 14). Although Anthony alleges that she was told by

6

a person delivering her orders at Port Allen that she was "nothing but a clerk," Anthony admitted that she had not been demoted. *Id.* at 13, 14; (Rec. Doc. 46 at 2). The USPS was in the process of recovering from a disruptive hurricane, and based on established policies, employees of all positions and description were called in from all over the region to help with the backlog of mail. (Rec. Doc. 41-2 at 6). Weisiger testified that she gave orders that any non-essential personnel needed to help in mail processing and that the employees were to return to their regular positions after the needs had been met. *Id.* at 10. Anthony was not in an essential position, so she was utilized to help process mail based on the needs of the USPS. *Id.* at 6. Anthony testified that she was aware of other management staff assigned to the workroom floor to assist where they could. (Rec. Doc. 41-3 at 23). She also admitted that no one at the USPS ever told her that she wasn't allowed to return to her previous position once the needs at Port Allen were met. *Id.* at 11. Anthony's reassignment was temporary and based on the need for USPS employees to share in the burden of bringing the mail back to speed after a disruptive hurricane. *Id.*; 41-2 at 10. She suffered no loss in wages or benefits, and she was not demoted. *Id.* at 13, 14. While her duties did change, this was only a temporary reassignment and therefore Anthony did not "lose" any duties on a permanent basis. *Pelgram,* 361 F.3d at 282 (quoting *Banks*, 320 F.3d at 575). Therefore, Anthony cannot carry her burden as she did not experience an adverse employment action.

      Additionally, Anthony cannot carry her burden of proof for the fourth element of a prima facie case for Title VII discrimination – that similarly situated employees not in her protected class were treated more favorably. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). In disparate treatment cases, the plaintiff-employee must show "nearly identical circumstances" for employees to be considered similarly situated. *Berguist v. Wash. Mut. Bank*, 500

7

F.3d 344, 353 (5th Cir. 2007). Anthony identified Gary LaBorde as the similarly situated employee outside her protected class who was treated more favorably by not being moved from his regular position. (Rec. Docs. 1 at 2, 4; 41-3 at 9-10). LaBorde is a Caucasian male who during the time at issue was the New Orleans in-plant support manager, and like Anthony, reported directly to Weisiger. *Id.* at 2; (Rec. Doc. 41-3 at 10). Weisiger testified that LaBorde was considered an essential employee and based on his expertise, was one of only five people selected to temporarily close the General Mail Facility in New Orleans and to return to New Orleans immediately after the storm to reopen the facility. (Rec. Doc. 41-2 at 3). Anthony had a different title with different responsibilities than LaBorde, and as discussed earlier, was not considered an essential employee. *Id.* at 6. The record demonstrates that Anthony and LaBorde were not similarly situated employees. Therefore, Anthony cannot carry her burden of showing that a similarly situated employee was treated more favorably.

Since Anthony cannot carry the burden of proving a prima facie case, as a matter of law, her claim of employment discrimination based on race and gender must be dismissed.

**c. Age Discrimination Claim**

Under the Age Discrimination in Employment Act of 1967 ("ADEA") it is unlawful for an employer to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623 (a)(1). To establish a prima facie case of age discrimination, the plaintiff must establish that: (1) she is forty or older; (2) she was subjected to adverse employment action; and (3) there is a causal link between her age and the employer's action. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312, 313

(1996). To establish a disparate treatment claim under the ADEA, the plaintiff must prove by a preponderance of evidence that age was the "but-for" cause of the employer's adverse action. *Gross v. FBL Fin. Serv, Inc.,* 129 S.Ct. 2343, 2352 (2009). If the plaintiff satisfies her prima facie case, the burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age. *Id.*

Here, Anthony can establish only the first element of an age discrimination claim - that she is older than forty. As mentioned *supra*, Anthony cannot carry her burden to prove that her temporary reassignment rose to the level of adverse employment action. The standard of "adverse employment action" under the ADEA is the same as under Title VII. *See Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (noting that "the first three elements of a prima facie case of age discrimination under the ADEA are identical to the first three elements of a Title VII prima facie case."). Furthermore, Anthony cannot carry her burden to prove that her age was the "but for" cause of her alleged adverse employment action. *Id.* In her EEO complaint, Anthony indicated three people who were not instructed to go to another facility, including LaBorde. (Rec. Doc. 41-2 at 9). According to Weisiger, all of these named employees were either over fifty years old or their age was unknown. *Id.* Weisiger further testified that Anthony's age was not a factor in her temporary reassignment. *Id.* at 8. Anthony has provided no evidence that her temporary transfer to Port Allen was motivated by age. Therefore, as a matter of law, her age discrimination claim must be dismissed.

### d. Retaliatory Discrimination Claim

Title VII makes it unlawful for an employer to retaliate against an employee who opposes

an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). The burden shifting framework provided by *McDonnell Douglas* to analyze discrimination cases also applies to Title VII unlawful retaliation cases. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). To make a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) that the plaintiff engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). Summary judgment is appropriate if the plaintiff cannot support all three elements. *Stewart v. Miss. Transp. Comm'n.*, 586 F.3d 321, 331 (5th Cir. 2009).

An employee has engaged in an activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C.A. § 2000e-3(a). Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 2011). Although informal complaints may constitute protected activity, not all abstract grumblings or vague impressions of discontent are actionable as complaints. *Hagan v. Echostar Satellite*, 529 F.3d 617, 626-27 (5th Cir. 2008). An adverse employment action is one that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Sante Fe Ry. Co v. White*, 548 U.S. 53, 68 (2006). Reassignment of job duties is not automatically actionable. *Id.* at 71. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case and "should be judged from the perspective

of a reasonable person in the plaintiff's position, considering all the circumstance." *Id.*(citing *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998)). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment action." *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

Anthony fails to establish her prima facie case because she is neither able to show that an adverse employment action occurred nor demonstrate a causal link between the protected activity and the adverse action. Thus dismissal is proper. Anthony's retaliation claim focuses on her August 2, 2008, letter to Senator Landrieu. (Rec. Docs. 1 at 4; 46 at 2-4; 41-5 at 7-14). Although the date stamp on the Senator's letter indicating receipt by the USPS District Manager's Office is clearly marked September 9, 2008, Anthony has spent considerable energy in an attempt to raise material issues of fact regarding when the letter should have actually arrived and the District Manager's Office and came to the attention of her supervisors. (Rec. Docs. 46 at 2-4, 7-8; 46-1 at 6; 50-5; 41-3 at 17-21). This effort is moot, since regardless of when the letter actually came to the attention of Anthony's superiors, her temporary reassignment does not rise to the level of adverse employment action protected by Title VII. As discussed *supra*, Anthony's reassignment to Port Allen after Hurricane Gustav was temporary, she was not demoted, and she received no diminution of her salary or benefits. Plaintiff's Deposition at 39-40. Given the circumstances of this case, a reasonable person in Anthony's position would not consider her temporary reassignment so materially adverse as to dissuade her from making charges of discrimination. *Burlington*, 548 U.S. at 71.

Furthermore, even if her temporary reassignment constituted adverse employment action

under Title VII, Anthony has failed to prove a causal link between her letter to Senator Landrieu and the allegedly adverse action. The evidence indicates the letter came to the attention of her superiors after her reassignment, and Anthony has provided no evidence demonstrating that Weisiger knew of this letter or that it influenced the decision to reassign her to Port Allen. (Rec. Doc. 41-5 at 6, 7, 15).

Anthony also points to her previous EEO activity as a basis for the alleged retaliatory discrimination. (Rec. Doc. 1 at 4). The USPS conceded that Anthony's May 2008 EEO complaint is protected activity. (Rec. Doc. 41-1 at 19). Even assuming that her temporary reassignment was adverse employment action, Anthony's prima facie case for retaliatory discrimination based on her previous EEO activity still fails because she is unable to prove a causal link existed between the protected activity and the alleged adverse action.

Plaintiff filed her EEO complaint in late May 2008, and it was dismissed with a finding of no discrimination. (Rec. Doc. 1 at 4; 41-3 at 16-17). Anthony's dispute occurred with a different manager, and not with Weigiser. (Rec. Doc. 41-3 at 16). Weisiger did not arrive at the Baton Rouge facility as Acting Plant Manager and Anthony's supervisor until August 16, 2008. (Rec. Doc. 41-2 at 4, 5, 6). Weisiger testified that she was unaware of Anthony's previous EEO activity. *Id.* at 6. She also testified that Anthony's previous EEO activity was not a factor in her decision to transfer her to the Port Allen facility. *Id.* at 9. Anthony even testified that she never discussed her prior EEO activity with Weisiger. (Rec. Doc. 41-3 at 23). Anthony is unable to provide any evidence beyond her naked assertions and conclusory belief that Weisiger was even aware of her EEO complaint filed in the Spring of 2008. Anthony cannot prove a causal link between here alleged protected activity and the alleged adverse employment action, an action which the Court

does not find sufficiently adverse. Therefore, her prima facie case for retaliatory discrimination based on her previous EEO activity must be dismissed.

The evidence demonstrates that Anthony's race, gender, or age were not factors in the decision to temporarily reassign her to perform mail processing in the Port Allen facility in the aftermath of Hurricane Gustav. Furthermore, her temporary reassignment to Port Allen does not rise to a sufficient level of adverse employment action. Additionally, the evidence demonstrates that her complaint to Senator Landrieu, regardless of when it was received by Anthony's supervisors, along with her previous EEO activity, was not the impetus for her reassignment. Anthony has produced no evidence or facts showing the existence of a genuine issue for trial in any of these claims.

## III. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment (Rec. Doc. 41) is GRANTED.

New Orleans, Louisiana, this 23rd day of June, 2011.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**